UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DBI INVESTMENTS, LLC,
A Michigan Limited Liability
Company,

            Plaintiff,

v.                                          Case No. 13-CV-13259
                                          HON. GEORGE CARAM STEEH
PAUL BLAVIN,

            Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (DOC. # 5)

### INTRODUCTION

This case was brought by a former investor in a dissolved limited partnership created and run by entities controlled by defendant. Plaintiff alleges that defendant improperly dissolved the partnership and liquidated its assets in violation of the partnership agreement, in contrast to defendant's oral representations that no such dissolution would take place. Defendant has moved to dismiss plaintiff's complaint in this matter, which alleges fraud, negligent misrepresentation, promissory estoppel, and unjust enrichment. Because plaintiff's allegations fail to state a plausible claim as to any of these counts, the court will grant defendant's motion.

### BACKGROUND

The principals in this dispute are old friends--Paul Blavin and Bruce Israel--and Bruce Israel's brother, David Israel. In the mid-1990s, Paul Blavin created PWB Value Partners, LP ("PWB") (a Delaware limited partnership) for the purpose of raising capital

and investing that capital on behalf of its general and limited partners.  Bruce and David Israel created a Michigan Limited Liability Company called DBI (David and Bruce Israel) Investments LLC ("DBI") to invest in PWB.  DBI became a limited partner of PWB.  PWB's general partner was "Preservation of Capital Management, LLC," and its investment manager was "Blavin & Co., Inc."  Defendant Blavin was a principal in both of these entities.  Agreements were drafted governing the relationships between all of these entities.  Both plaintiff's complaint and the pleadings filed in connection with this motion cite extensively to the Fourth Amended and Restated Agreement of Limited Partnership ("Limited Partnership Agreement"), which governs the relationship between PWB and its limited partners such as plaintiff DBI.

 As described in plaintiff's complaint, Blavin & Co. was paid management fees by PWB Value Partners at an annual rate of 1 percent of each of the limited partners' capital account balance.  Additionally, Preservation of Capital Management received a performance-based fee from PWB Value Partners each year if the net profits allocated to each limited partner exceeded what was termed a "Threshold Amount," calculated using a formula tied to the return on the one-year U.S. Treasury bill and limited partners' performance from prior years.  If that Threshold Amount was satisfied as to a limited partner for any particular fiscal year, that limited partner was allocated net profits equal to the Threshold Amount, followed by an allocation of profits to Preservation of Capital Management (which plaintiff states were 20% of the amount of net profits equal to the "hurdle rate").  Any remaining profits were divided by the limited partner, receiving 80%, and Preservation of Capital Management, receiving 20%.

During the years from 1996 to 2007, defendant asserts plaintiff made "over thirty investments in PWB aggregating to $7.66 million," and with each investment executed a written subscription agreement.  Defendant describes the success plaintiff realized in its investments for many years, which is not disputed by plaintiff.  However, that all changed in 2007-08, when market conditions seriously declined.

At a meeting near the end of the 2008 fiscal year between the Israels and Blavin, Blavin announced to the Israels that PWB would be dissolved.  Plaintiff alleges that Blavin told the Israels that it was unlikely that the Threshold Amount would be met for several years (and as a result, no Performance Fee would be earned by Preservation of Capital Management), that he said would not work for "peanuts," and that he would be dissolving PWB Value Partners and begin spending more time with his family.  Plaintiff asserts that this was "shocking inasmuch as that meant that Blavin was abandoning the core investment principles and philosophy upon which he founded PWB Value Partners, and which he continuously reiterated were in place, simply because he would not be deriving enough personal compensation in the short run."  Complaint, ¶ 38.

On March 2, 2009, a Dear Partner letter was sent to the PWB limited partners, including language stating that "I have decided to liquidate our partnership and return your capital to you." The letter also stated "I have enjoyed, more than I can adequately express, being your fiduciary over the past 14+ years.  I am grateful for the trust and confidence that you have generously placed in me."  March 2, 2009 Dear Partner letter.  PWB then made payouts to each of the limited partners, including plaintiff.  Plaintiff claims this "untimely dissolution" represented Blavin's failure to honor all that he had represented to the Israels over the years.  Plaintiff asserts, in Paragraph 46 of the

complaint, that this "unilateral dissolution" was done "without any notice calling for a partnership meeting, without the consent of a majority in interest of the limited partners, and in direct contravention of Blavin's representations as to the long-term investment principles of PWB Value Partners."[1] Plaintiff alleges that Blavin's action caused it to realize permanent significant losses.

Over four years later, plaintiff filed suit in state court against Paul Blavin individually, rather than PWB Value Partners or any related entity, asserting claims of fraud (Count I); negligent misrepresentation (Count II); promissory estoppel (Count III); and unjust enrichment (Count IV). That suit was removed to this court on the basis of diversity jurisdiction; plaintiff is a Michigan limited liability corporation and defendant Blavin is a citizen of Arizona.

Defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). The issue presented in the Rule 12(b)(1) motion, mandatory arbitration, is no longer before the court, as discussed and agreed at oral argument. The Rule 12(b)(6) arguments are addressed below.

## STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in favor of the plaintiff, accept the factual allegations as true, and determine whether the allegations present plausible claims. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The pleading must provide "more

---

[1] Defendant apparently disputes that the dissolution violated the partnership agreement, claiming plaintiff is ignoring applicable provisions in the agreement; however, this issue is not before the court.

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although the complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level[.]" Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (citing Twombly, 550 U.S. at 555). The court should first identify any conclusory allegations and bare assertions that are not entitled to an assumption of truth, then consider the factual allegations that are entitled to a presumption of truth and determine if they plausibly suggest entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009).

## DISCUSSION

Defendant's first 12(b)(6) argument is that the tort claims alleged in Counts I and II are subject to dismissal because they are based on contractual duties, and alternatively because the alleged misrepresentations involve promises of either future performance or opinions. Next, defendant contends that the promissory estoppel claims fail because plaintiff could not possibly establish detrimental reliance on Blavin's statements in light of the relevant contracts' integration clauses. Finally, defendant argues that plaintiff's unjust enrichment claims fail because plaintiff has not adequately pleaded the elements of such a claim (i.e. that defendant received a benefit and that defendant's retention of that benefit is inequitable), and cannot, in light of the express contract governing this subject matter. The court will address these in turn.[2]

---

[2] As defendant discusses in a footnote, although the Limited Partnership Agreement is governed by Delaware law, plaintiff has brought tort claims under Michigan law, and both parties' briefs rely on Michigan caselaw.

1.  Fraud and Negligent Misrepresentation

Defendant's first argument for dismissal of plaintiff's Counts I and II is that no duty separate and distinct from the subject matter of the Partnership Agreement has been alleged. Therefore, defendant asserts, plaintiff does not have a cause of action other than for breach of contract. Plaintiff does not contest the general proposition that an action in tort may not be pursued for the nonperformance of a contract, but contends that the tort claims are "based upon Blavin's alleged active misfeasance." (Plaintiff's Brf. at 17.) Plaintiff emphasizes that the Partnership Agreement is not between plaintiff and Blavin the individual, so it is impossible for the acts taken by defendant Blavin to have been covered by a contract. Plaintiff states that "the question is whether Blavin can be held liable for the tortious acts that he personally committed." (Id. at 15.)

An examination of the complaint and the briefs on this motion demonstrates that the "active misfeasance" alleged by plaintiff to be the basis for these counts consists of statements allegedly made by Blavin prior to and during plaintiff's tenure as a limited partner of PWB Value Partners; oral representations that dissolution would occur in accordance with the Limited Partnership Agreement; and alleged misrepresentations made in the Dear Partner Letters (in which, plaintiffs emphasize, Blavin referred to himself in the first person). Plaintiff's contention is, apparently, that these actions taken by Blavin seduced the Israels into keeping their funds in his enterprise, following which he pulled the rug out from under them on a moment's notice, causing them injury.

The plaintiff's claims are necessarily based on their contention that Blavin was acting as an individual and not in a representative capacity on behalf of a business entity in certain discussions and correspondence with DBI. However, the content of the

Dear Partner Letters, which are attached to defendant's motion as Exhibit 6, belies this assertion. All of those letters, referenced and quoted in the complaint and therefore properly considered on this motion to dismiss,[3] are written on letterhead of PWB Value Partners. Moreover, although Paul Blavin signs the letter simply "Paul Blavin," without a title, the content of the letters clearly demonstrates that they are written on behalf of the partnership. Throughout the letters Blavin discusses the business, personnel, affiliations, and financial forecast of the partnership, repeatedly speaking in the second person, stating that "we" will forward financial documents, invest in certain ways, etc. Two specific statements in these "Dear Partner" letters cited by plaintiff as support for its claims relate to "time horizons" for investments made in 2007 (5 years) and 2008 (3-5 years). While Blavin does at times refer to himself in the first person in these letters-- for example, when he states his belief in certain investment philosophies-- the court does not find that this alters the fact that these are business letters discussing the business of the partnership. Plaintiff's argument to the contrary is simply disingenuous. For this reason, the court will not consider the contents of the "Dear Partner" letters in determining this motion, as they were not written by Blavin as an individual.

Concerning the remaining statements cited by plaintiff as the bases for its claims, the court notes that paragraphs 20 through 24 of the complaint simply restate provisions of the Limited Partnership Agreement, apparently reiterated by Blavin to the Israels on undated occasions concerning what would occur "in the event that

---

[3] The court may consider documents attached as exhibits to a motion to dismiss if such are referenced in the complaint and central to its claims. See Bassett v. National Collegiate Athletic Assoc., 528 F.3d 426, 430 (6th Cir. 2008).

Preservation of Capital Management ceased to be the general partner" or "the general partner and a majority in interest of the limited partners vote to dissolve the partnership."  The same applies to plaintiff's references to Blavin's discussions of the fee arrangement, which is also set forth in the Limited Partnership Agreement. Plaintiff's citation to the Limited Partnership Agreement and its provisions, in the form of a document or as reiterated by Blavin, cannot be the basis of a tort claim against Blavin as an individual.  See In re Bradley Estate, 835 N.W.2d 545, 554 FN37 (Mich. 2013) (citing, e.g. Hart v. Ludwig, 79 N.W.2d 895, 897 (Mich. 1956), for the proposition that "to support a cause of action in tort, there 'must be some breach of duty distinct from breach of contract'").  At most, these statements boil down to an alleged promise to abide by the terms of an existing contract, nothing more.

What remains, then, are more undated general allegations contained in paragraphs 19 and 20, and restated in connection with the fraud and misrepresentation counts, that Blavin told plaintiff how investments would be made and held, and that the partnership would "continue indefinitely."  The court agrees with defendant that these allegations reflect promises of *future* performance, and also notes that such allegations lack the requisite specificity for allegations of fraud.[4]

In Michigan, a claim of fraud or negligent misrepresentation requires a false representation that was known to be false when made (or made recklessly), made with the intention that it would be acted upon by the plaintiff.  Plaintiff then must have acted on the representation and have been injured by it.  See Hi-Way Motor Co. v.

---

[4] See Fed. R. Civ. P. 9(b).

International Harvester Co., 247 N.W.2d 813, 816 (Mich. 1976).  However, such claims cannot be premised on a promise to do something in the future.  Derderian v. Genesys Health Care Sys., 689 N.W.2d 145, 156 (Mich. Ct. App. 2004) (citing Hi-Way Motor Co., 247 N.W.2d at 816; Eerdmans v. Maki, 573 N.W.2d 329, 333 (Mich. Ct. App. 1997)).

Any of Blavin's alleged verbal statements about what he *would* be doing in connection with the investments in the partnership relate to the future, and therefore cannot constitute fraud.  Moreover, the alleged statements are undated, with some specifically alleged by plaintiff to have occurred *prior* to its first investment in the partnership in the mid-1990s, and the remaining statements occurring "throughout" the relationship.  These forward-looking statements also cannot be said to fall into the "bad faith" exception to the rule about future promises, as plaintiff contends.  Under that exception, a promise of future performance made in bad faith may constitute fraud if there was no intention to perform at the time the statement was made.  Hi-Way Motor Co., 247 N.W.2d at 816-17.  As defendant argues, such an exception would require plaintiff to allege a fraudulent intent on the part of Blavin "at the very time of making the representations, or almost immediately thereafter."  Derderian, 689 N.W.2d at 156 (internal citations omitted).  The court notes that, according to plaintiff's own allegations, over a decade followed the initial statements, during which all involved enjoyed success in their investments.  The court agrees that such statements are much more like the promise to perform with "integrity," as defendant argues, in the case of PHD Mich., L.L.C. v. Outfitters Ass'n of America, 2006 WL 2042515 at *8 (citing Hi-Way Motor Co.,

247 N.W.2d at 816).[5]   The ultimate dissolution of PWB in 2009 cannot be said to support plausible allegations of a "present" fraudulent intent at various points beginning in the mid-1990s and spanning over a decade, during which time the partnership was thriving.  The court simply cannot find such allegations to state a claim for fraud or negligent misrepresentation.

2. Promissory Estoppel and Unjust Enrichment

In Counts III and IV, plaintiff alleges that Blavin's statements to the Israels also entitle them to relief under theories of promissory estoppel and unjust enrichment.

In Michigan, the elements of a promissory estoppel claim are (1) a promise (2) that the promisor should reasonably expect to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided.  Novak v. Nationwide Ins. Co., 599 N.W.2d 546 (Mich. Ct. App.1999).  The doctrine is "cautiously applied," and the "*sina qua non* of promissory estoppel is a promise that is definite and clear."  Marrero v. McDonnell Douglas Capital Corporation, 505 N.W.2d 275, 278 (Mich. Ct. App.1993) (citing State Bank of Standish v. Curry, 476 N.W.2d 635 (Mich. Ct. App.1991), reversed in part on other grounds 500 N.W.2d 104 (1993).  Where a written contract covering the same subject matter exists,

---

[5]The court is likewise unconvinced by plaintiff's assertion that the fraud claim can survive because these statements were accepted as representations of fact "peculiarly within the knowledge of the speaker," quoting Crook v. Ford, 229 N.W. 587, 588 (Mich. 1930), or general assertion that a special relationship of trust between the parties allows the claim to survive.

the doctrine of promissory estoppel is not applicable. See General Aviation, Inc. v. Cessna Aircraft Co., 915 F.2d 1038, 1042 (6th Cir. 1990).

In the promissory estoppel count, plaintiff generally asserts that Blavin made the same statements to plaintiff discussed above, e.g., addressing PWB's "long-term investment principles;" Blavin's pledge of "loyalty" to PWB's limited partners in watching over their investments; limitations on how PWB could be dissolved; the "time horizons" for investments; and that the fee structure was in the best interest of both the general and limited partners. Plaintiff asserts these statements were promises that induced it to make the initial investment (and dozens of additional investments over time) in the partnership. Plaintiff asserts that each time Blavin made these statements, he had no present intention of continuing his performance of them in the event that the Threshold Amount was not met. Once this situation presented itself, plaintiff contends that Blavin then *breached such promises and representations* by "unilaterally dissolving PWB Value Partners at a time when it appeared that the Threshold Amount would not be met in the short term." Complaint at ¶ 96. This argument clearly demonstrates that what is alleged here is Blavin's promise that the relationship between PWB and plaintiff would come to an end only in a certain way. However, plaintiff signed an agreement specifically addressing the way in which the partnership could be dissolved. Moreover, that agreement contained an integration clause, which makes plaintiff's alleged reliance on any outside representations about its investment relationship with PWB unreasonable.[6] UAW-GM Human Resource Ctr. v. KSL Recreation Corp., 579 N.W.2d

---

[6]Plaintiff makes an alternative but unconvincing argument that Blavin's statements constituted fraud in the inducement. As noted above, however, many of plaintiff's

411, 419 (Mich. Ct. App.1998). A promissory estoppel count is not appropriate under these circumstances. General Aviation, Inc., 915 F. 2d at 1042.

Unjust enrichment is an equitable remedy, applied by courts to prevent the retention of unjust "money or benefits which in justice and equity belong to another." Tkachik v. Mandeville, 790 N.W.2d 260, 266 (Mich. 2010) (quoting McCreary v. Shields, 52 N.W.2d 853, 855 (Mich. 1952) (internal citation omitted)). Its elements are (1) the defendant's receipt of a benefit from the plaintiff and (2) an inequity to plaintiff as a result. Barber v. SMH (US), Inc., 509 N.W.2d 791, 796 (Mich. Ct. App. 1993); Dumas v. Auto Club Ins. Ass'n, 473 N.W.2d 652, 663 (Mich. 1991). Under these circumstances, courts may imply a contract to prevent the defendant's unjust enrichment, but may not do so where there is an express contract covering the same subject matter. Martin v. East Lansing School Dist., 483 N.W.2d 656, 661 (Mich. Ct. App. 1992).

In plaintiff's unjust enrichment count, the benefits allegedly "received" by Blavin were the "management fees paid to Blavin & Co. and the Performance fees paid to Preservation of Capital Management." Complaint at ¶ 104. Although plaintiff alleges these were "personally" taken by Blavin, fees taken out of plaintiff's profit by PWB and distributed according to the Limited Partnership Agreement were not paid to Blavin the individual. The court also notes these fees paid to Blavin & Co. and Preservation of

---

allegations either reference the partnership agreement itself, or are undated and general claims that could not serve to vitiate a contract containing an integration clause. Furthermore, concerning the integration clause, the court notes that the defendant cited to such clauses contained both in the partnership and subscription agreements but finds no need to consider those contained in the individual subscription agreements.

Capital Management reflected, to a certain degree, PWB's success (see discussion of payment structure, above), and the court questions how such payments could represent unjust enrichment. Most importantly, however, these fees were governed by the LPA. Where an express contract to which plaintiff was a signatory governs the premise of the alleged unjust enrichment, like promissory estoppel, it is subject to dismissal for failure to state a claim. Id., Convergent Grp. Corp. v. Cnty. of Kent, 266 F.Supp.2d 647, 661 (W.D. Mich. 2003). Such is the case with this claim.

## CONCLUSION

For the reasons given above, defendant's motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), is hereby **GRANTED**. The complaint will be dismissed in its entirety and judgment will enter for defendant.

**IT IS SO ORDERED**.

Dated: March 6, 2014

s/George Caram Steeh  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 6, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin  
Deputy Clerk

---